## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| KATE EVERINGHAM and MARISSA HAGY, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 2:24-cv-00487-DCN |
| v. | |
| ARCADIA PUBLISHING INC., | |
| Defendant. | |

## PLAINTIFFS' MEMO IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**INTRODUCTION**

Plaintiffs, on behalf of themselves and the putative Settlement Class, move the Court to preliminarily approve the class action settlement with Arcadia Publishing Inc. ("Arcadia Publishing" or "Defendant"), as "fair, adequate, and reasonable." *See* Settlement Agreement, attached hereto as **Exhibit 1** ("Settlement Agreement"). On April 19, 2023, cybercriminals accessed Arcadia Publishing's systems without authorization and may have accessed the personally identifiable information ("Private Information") belonging to approximately 13,669 current and former Arcadia Publishing employees, as well as individuals with whom Arcadia had done business. The information Arcadia Publishing collected contained highly private and sensitive information including names, Social Security numbers, addresses, tax identification numbers, and/or financial account information.

Based on this event, Plaintiffs sued Arcadia Publishing under six counts, alleging the company violated its duty to protect their Private Information. After several weeks of hard-fought arm's length negotiation and a full day mediation where key terms were finalized, the Plaintiffs and Arcadia Publishing reached the Settlement Agreement (the "Settlement" or S.A.") attached hereto as **Exhibit 1**.[1]

Under the Settlement, Arcadia Publishing will fund a $450,000 non-reversionary common fund from which Settlement Class Members are eligible to recover up to $5,000 in unreimbursed economic loss, including $25 an hour for up to 5 hours of lost time responding to the data incident, three years of credit monitoring protection, or, alternatively a cash payment estimated at $100. In addition, Arcadia Publishing has committed to implement or maintain additional data security

---

[1] All capitalized terms used herein should be given the meaning assigned in the Settlement Agreement.

measures at its own expense and separate from the other settlement benefits for the Settlement Class. As detailed herein, the Settlement surely satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Verita as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Kate Everingham and Marissa Hagy as Representatives of the Class; (6) appointing Raina Borrelli of Strauss Borrelli PLLC, as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B) and Claim Form (Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service award.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide the Settlement Class Members with substantial monetary relief without the risk of delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

BACKGROUND FACTS & PROCEDURAL HISTORY

### A.    The Data Incident

Arcadia Publishing is "the nation's leading publisher of books of local interest." Doc. 18, Amended Complaint ("Am. Compl.") ¶ 18. To run its business, Arcadia Publishing collects Private Information from its employees. *Id*. ¶¶ 1, 19. That information includes current and former

2

employees' names, Social Security numbers, tax identification numbers, and financial account information. *Id*. ¶ 2. In so doing, Plaintiffs allege that Arcadia Publishing promises to protect its former and current employees' data. *Id*. ¶¶ 19-21. Even so, Plaintiffs allege that Arcadia Publishing never implemented the safeguards and systems needed to fulfill those promises. *Id*. ¶ 22. As a result, Plaintiffs allege that Arcadia Publishing's misconduct led to a data incident occurring on March 6, 2023. *Id* ¶¶ 28-29. Defendant denies these allegations.

### B.     Plaintiffs' Claims and Federal Court Procedural History.

Plaintiffs are current and former Arcadia Publishing employees as well as other alleged data incident victims. *Id*. ¶¶ 1, 10, 55, 69. On January 25, 2024, Plaintiff Everingham sued Arcadia Publishing in the District of South Carolina, Charleston Division, to remediate the harm the incident had caused the Class. *See* Doc. 1. This Complaint asserted six counts and demanded that Arcadia Publishing reimburse Plaintiff and the Class for their losses. On August 2, 2024, Plaintiff Everingham amended her complaint to add Plaintiff Marissa Hagy. Doc. 18. Prior to filing their case, Plaintiffs' counsel conducted extensive pre-suit discovery to ascertain all publicly available details about the cause, scope, and result of the data incident, as well as about the damages suffered by Plaintiffs and the Class. Borrelli Dec. ¶ 3.

Shortly after Plaintiff Everingham filed the initial complaint, and recognizing the benefits of early resolution, the parties agreed to work cooperatively to schedule mediation and attempt to resolve their claim. *Id*. ¶ 4.

Meditation was scheduled for June 12, 2024. In advance of that date, Plaintiffs requested, and Arcadia Publishing produced, key information to inform the settlement negotiations, including without limitation the size of the Settlement Class, facts concerning the named Plaintiffs, and other pertinent facts. *Id.*

### C.    Mediation

On June 12, 2024, the parties participated in a full-day mediation with Judge Costa M. Pleicones (Ret.) from Haynsworth Sinkler Boyd, P.A., the former Chief Justice of the South Carolina Supreme Court, and a mediator experienced in resolving complex litigation, including class action cases. Borrelli Decl. ¶ 5. Under his guidance, the parties negotiated at "arm's length," communicating their positions through him and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.* While negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.* ¶6.

After a full day of mediation, and with the assistance of Justice Pleicones, the parties reached agreement on the key terms of the Settlement. *Id.* ¶8. In the following weeks, the parties diligently negotiated and circulated drafts of the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id.* The Settlement Agreement was finalized and executed on August 19, 2024. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members.

### SETTLEMENT OUTLINE

The Settlement Agreement specifies how to implement the parties' settlement from start to finish, including how to define the Settlement Class, the benefits they will receive, how to handle claims, and how Plaintiffs may petition for fees and service awards.

### A.  Class Definition

The Settlement Agreement defines the Settlement Class as "[a]ll individuals residing in the United States who were sent a notice by Arcadia informing them of the Data Incident Arcadia

discovered in April 2023 or were otherwise determined to have had personal information potentially impacted." S.A. ¶ 48.

### B. Settlement Benefits

This $450,000 non-reversionary common fund settlement secures three significant benefits for the Settlement Class, remediating and mitigating the harms the data incident has allegedly caused and will continue to cause.

First, Settlement Class members can file a claim to receive three years of credit monitoring with one-bureau credit monitoring, at no cost if they elect to enroll. *Id.* ¶¶ 17, 62. These services will come with fraud insurance, covering up to $1 million in losses for members who enroll. *Id.*

Second, the settlement offers Settlement Class members a chance to claim monetary benefits from the incident, including unreimbursed economic losses, lost time, and an alternative cash payment. *Id.* ¶¶ 57, 62. For unreimbursed economic losses, Settlement Class Members may claim up to $5,000 for losses resulting from the incident, including identity theft, fraud, and costs spent mitigating those risks. *Id.* ¶ 62. They can also claim "lost time" dealing with the incident at $25/hour for up to five hours. *Id.* To support their claim, a class member need only supply receipts or "documentation" evidencing the loss, though claimants need not submit evidence for "lost time" claims. *Id.*

Third, in the alternative to credit monitoring, unreimbursed economic losses, and lost time, Settlement Class Members can make a claim for an alternative cash payment (estimated at $100) *Id.* To receive this benefit, a Class Member needs only to submit a valid claim form and does not need to submit any documentation or evidence. These claims allow claimants to recover for the varying types of losses and damages allegedly suffered as a result of the data incident.

Fourth, Arcadia Publishing has confirmed it has improved its cybersecurity since the data incident, affirming that commitment in the Agreement: "Defendant shall provide Plaintiffs' Counsel with a confidential declaration or affidavit […] attesting that agreed upon security related measures have been implemented on […] and identifying the approximate cost of those security - related measures." *Id*. ¶ 80. Altogether, these improvements will safeguard the Private Information Arcadia Publishing still possesses, including data belonging to Settlement Class members.

### C.  Class Notice

To notify the Settlement Class, the settlement outlines how the Claims Administrator will collect Settlement Class member information and notify them about the settlement's terms. *Id*. ¶ 81. To start, the Settlement Administrator will create and update the Settlement website where it will post all documents relating to this case and the settlement, including all claim forms needed to submit a claim online. *Id.* ¶ 53. Under the Agreement, the website must allow class members to file claims "electronically" if they so choose. *Id*. ¶ 13. Then, the Claims Administrator will notify all Settlement Class members by mail using mailing addresses known and on file with Arcadia Publishing. *Id*. ¶¶ 49, 81. Under the Settlement Agreement, the Claims Administrator will start this process 30 days after the Court preliminarily approves the settlement and the class will have 90 days to claim benefits after mailing. *Id*. ¶¶ 13, 33.

### D.  Claims, Objections, Opt-Outs, and Termination

The parties agree that Verita will serve as the Claims Administrator to process all claims. The Claims Administrator will process all claims, including by reviewing any documents a claimant attaches to support their claim. *Id.* ¶¶ 47, 76. To claim benefits, Settlement Class Members "submit a valid and timely Claim Form." *Id.* ¶ 62. This Claim Form must be submitted via mail or "electronically" during the Claims Period and on or before the Claims Deadline. *Id.* ¶ 13. The Claims Administrator may also seek clarification and request documents to support the

claim, including documents evidencing any efforts by the claimant to mitigate their losses. *Id.* ¶¶ 63-65. If approved, Class Members will receive payments by electronic payment and/or checks after the claims deadline. *Id.* ¶ 52.

Settlement Class members may also object to the settlement by notifying the Claims Administrator within 60 days from the day the administrator notifies the Settlement Class about settlement. *Id.* ¶¶ 35, 84. To object, an objector need only state their contact information, identify the case name and number, establish themselves as a Settlement Class member, state why they are objecting, sign the objection, state whether an attorney is representing them, list any other matters the individual may have lodged an objection to a legal proceeding, file all documents the objector wants the Court to consider, and state if they intend to appear at the Final Approval Hearing. *Id.* ¶ 84. Any Settlement Class Member who does not file a timely objection in accordance with the Settlement Agreement will waive the right to object or to be heard at the Final Approval Hearing and shall be bound by the terms of the Agreement. *Id.*

And last, Settlement Class members may opt-out from receiving the settlement's benefits by notifying the Claims Administrator in a signed writing the words "Request for exclusion" or a comparable statement that the individual does not wish to participate in the Settlement. *Id.* ¶ 83. Those who opt out will not benefit from the Agreement and will preserve any claims they have against defendant following its data breach. *Id.* As with any objectors, members opting out must notify the administrator within 60 days from the day the administrator notifies the class about settlement. *Id.* ¶ 36.

The parties conditioned their settlement on this Court's approval, meaning it will terminate if the Court denies "final" approval. *Id.* ¶ 91.

### E.  Release

To receive the settlement's benefits, Plaintiffs and the Settlement Class agree to release Arcadia Publishing from their class action claims. *Id*. ¶¶ 93-97. The parties tailored the release to affect only those claims related to Arcadia Publishing's data breach, defined as "Released Claims" under the agreement. *Id*. That release will take effect after the Court enters its "Final Approval Order" approving the settlement, though it will not prevent the parties or class members from moving to enforce the settlement's terms. *Id*. ¶ 98.

### F.  Attorneys' Fees and Service Awards

The parties did not discuss or negotiate the fee or service award until they agreed on the terms benefiting the class. Borrelli Dec. ¶ 7. As a result, the parties avoided conflict with the Settlement Class's interests, thus fulfilling their responsibilities to the Settlement Class first. *Id*.

If the Court preliminarily approves the settlement, Plaintiffs may petition the Court fourteen (14) days before the objection deadline to approve their requested attorney's fees and service award. S.A. ¶¶ 99, 101. The Settlement provides that Plaintiffs can seek up to 33.33% of the Settlement Fund (or $150,000) in fees and up to $20,000 in costs, as well us up to $5,000 as a service award for each Settlement Class Representative. *Id*.

### ARGUMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583, 2016 U.S. Dist. LEXIS 187745, at *14 (D.S.C. May 26, 2016) (internal quotation omitted). After all, such settlements "conserve scarce resources that would otherwise be devoted to protracted litigation." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927, 2019 U.S. Dist. LEXIS 26450, at *21 (D.S.C. Feb. 14, 2019) (citing *In re Jiffy Lube Sec. Litig*., 927 F.2d 155, 158–59 (4th Cir. 1991)). Thus, there is a "'strong initial presumption' in class action cases 'that the compromise is fair and reasonable.'" *Id*. (quoting *In re MicroStrategy, Inc. Sec. Litig*., 148 F. Supp. 2d 654, 663 (E.D. Va. 2001)); *see also In re*

*Allura Fiber Cement Siding Litig.*, Civil Action No. 2:19-mn-02886, 2021 U.S. Dist. LEXIS 96931, at *6 (D.S.C. May 21, 2021) (noting the "the general judicial policy favoring settlement").

Under Rule 23(e), a class action may be settled "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). And "[a]lthough Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, the courts generally have followed a two-step procedure." *Reed*, 2016 U.S. Dist. LEXIS 187745, at *15. **First**, at the preliminary approval stage, "the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Id.* (internal quotation omitted). **Second**, at the final approval stage, "[if] the court grants preliminary approval and notice is sent to the class, the court conducts a 'fairness' hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id*.

Ultimately, "[t]he driving concern of the Court's fairness inquiry is whether the proposed settlement 'was reached as a result of good faith bargaining at arm's length, without collusion[.]'" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *22 (quoting *In re Jiffy Lube*, 927 F.2d at 159). Thus, "federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL No. 2:18-mn-2873, 2021 U.S. Dist. LEXIS 16470, at *7 (D.S.C. Jan. 25, 2021) (quoting *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 424 (4th Cir. 2003)).

### A.  Preliminary Approval of the Settlement is Warranted.

South Carolina courts have found that "[p]reliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *20 (quoting *Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 199143, at *14 (D.S.C. July 31, 2012)). In other words, "[t]he purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is 'sufficiently within the range of reasonableness.'" *Id.* at *21 (quoting *In re Outer Banks Power Outage Litig.*, No. 4:17-CV-141, 2018 U.S. Dist. LEXIS 73795, at *9 (E.D.N.C. May 2, 2018)). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." William B. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011).

At the preliminary approval stage, the court's review effectively consists of three steps. ***First***, the court must determine if the proposed settlement class satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *9. ***Second***, for class actions brought under Rule 23(b)(3), the court must determine if the proposed settlement class satisfies the two requirements of Rule 23(b)(3): predominance and superiority. *Id.* ***Third***, the court must determine if the proposed settlement is "fair, adequate, and reasonable[.]" *Id.* at *20. As detailed below, this inquiry includes the consideration of numerous factors.

Here, the proposed settlement satisfies Rule 23(a), 23(b)(3), and is fair, adequate, and reasonable. In fact, the proposed settlement aligns with substantially similar data breach settlements within the Fourth Circuit. *See e.g., In re Capital One Consumer Data Sec. Breach*

10

*Litig.*, No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943, at *13 (E.D. Va. Sep. 13, 2022) (granting final approval in a data breach class action); *Brent v. Advanced Med. Mgmt., LLC*, No. JKB-23-3254, 2024 U.S. Dist. LEXIS 112172, at *2 (D. Md. June 25, 2024) (same); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558, at *20 (D. Md. July 15, 2019) (same); *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202, at *6 (E.D. Va. Nov. 19, 2021) (same). Thus, the Court should grant preliminary approval.

### B.  The Settlement Class Meets the Requirements of Rule 23(a).

The proposed settlement satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Additionally, in the Fourth Circuit, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *7 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Still, when considering a request for settlement-only class certification, the court need not consider trial manageability. *Amchem*, 521 U.S. at 620.

### 1.  The Class is sufficiently numerous.

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *See e.g., Williams v. Henderson*, 129 Fed. App'x 806, 811 (4th Cir. 2005) (indicating that a class with over 30 members justifies a class); *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *10 (finding numerosity satisfied when the "proposed class consist[ed] of approximately 300 households . . . each of approximately three to four residents). Here, with approximately 13,669 individuals in the Settlement Class, numerosity is readily met.

**2. Questions of law and fact are common to the Class.**

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Notably, even "[a] single common question will suffice, but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *11 (quoting *Adair*, 764 F.3d at 360). And this Court has held that commonality is satisfied when "common allegations raise common answers likely relevant to resolving the claims[.]" *Id*. Thus, in the settlement context, "[t]he commonality requirement . . . is 'not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases.'" *Comm'rs of Pub. Works v. Costco Wholesale Corp*., 340 F.R.D. 242, 247 (D.S.C. 2021) (quoting 1 Newberg on Class Actions § 3:18 (5th ed.)).

Commonality is readily satisfied in data breach class actions like this. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *14 ("Here all Settlement Class Members suffered the same alleged injury from the same conduct—exposure of their personal data in the Data Breach— and are asserting the same legal claims. Accordingly, common questions of law and fact abound."); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at * 9 (D. Md. June 25, 2024) (same); *Nat'l Bd. of Exam'rs in Optometry,* 2019 U.S. Dist. LEXIS 120558, at * 11 (same); *Abubaker*, 2021 U.S. Dist. LEXIS 252202, at *7-8 (same); *In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at *10 (M.D.N.C. June 17, 2024) (same).

Here commonality is readily satisfied as Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on or about March 6, 2023. Specifically, Plaintiffs alleged the following questions of law and fact that are common to the class, as discussed *supra*, such as the effectiveness of Arcadia Publishing's data security systems and the lawfulness of their actions and omissions, and the legal issues faced by the Settlement Class arise from the same set of facts related to the Data Incident. Thus, commonality is satisfied.

### 3. Plaintiffs' claims and defenses are typical.

Class Representatives for the Settlement Class fulfill Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *13 (E.D.N.C. July 22, 2009); *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *11 (D.S.C. Jan. 25, 2021) (same). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006). "Generally, the court must determine whether the asserted claims 'arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Id.* at *40 (citing *Rodger*, 160 F.R.D. at 538).

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the

same Data Security Incident and involve the same overarching legal theories. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12. The legal and factual arguments that the Plaintiffs representing the Settlement Class advance are the same arguments that other Settlement Class Members would advance in support of their claims. In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 339 (4th Cir. 2006); *see also Robinson*, 2019 U.S. Dist. LEXIS 26450, at *13 (same); *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *12; *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 U.S. Dist. LEXIS 1765, at *20 (D.S.C. Jan. 8, 2015) (same).

### 4. Plaintiffs will provide fair and adequate representation.

Adequacy requires that the class representative and their counsel must adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The court conducts "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *12 (quoting *Lott v. Westinghouse Savannah River Co*., 200 F.R.D. 539, 561 (D.S.C. 2000)).

Here, Plaintiffs' interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' Private Information was all allegedly compromised by Arcadia Publishing in the same manner. Moreover, the Settlement Agreement provides that Plaintiffs and Settlement Class Members are all eligible for the same benefits. Though Plaintiffs will each be seeking a $5,000

award (for a total of $10,000) for their services on behalf of the Settlement Class, this award is similar to the amount that can be recovered by any Settlement Class Member for documented and unreimbursed extraordinary losses. This amount is also justified by the benefits brought to the Settlement Class by the work of Plaintiffs. Borrelli Decl. ¶5.

Finally, Settlement Class Counsel has significant experience litigating class actions, particularly in the data breach context. Settlement Class Counsel is well-suited to advocate and litigate on behalf of the Settlement Class. *Id*. ¶¶ 9, 15-18, Ex. A. Settlement Class Counsel has put their collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to class members. Thus, adequacy is readily satisfied.

### 5.  Class Members are readily identifiable.

The "readily identifiable" standard is satisfied when class members can be identified "in reference to objective criteria." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *8 (quoting *Adair*, 764 F.3d at 358 (4th Cir. 2014). However, "plaintiffs need not be able to identify every class member at the time of certification[.]" *Id*. Indeed, approval is proper when "the practical issue of identifying class members is not overly problematic such that administrative burdens of certification may outweigh the efficiencies expected in a class action." *Id*. (quoting *Cuming v. S.C. Lottery Comm'n*, Civil Action No. 3:05-cv-03608, 2008 U.S. Dist. LEXIS 26917, at *5 (D.S.C. Mar. 28, 2008)) (internal quotation omitted). Class Member information here is readily available from Defendant and will be provided to Settlement Administrator within seven (7) days of the entry of Plaintiffs' Preliminary Approval order. S.A. ¶49. Thus, identifiability is satisfied.

### C.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

The proposed settlement similarly satisfies the two requirements of Rule 23(b)(3): predominance and superiority. *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *14.

**1. Common questions of law and fact predominate.**

Predominance requires that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at \*14 (quoting Fed. R. Civ. P. 23(b)(3)). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Notably, the Supreme Court is clear that predominance "does ***not*** require" a plaintiff to "show that the elements of [their] claim are susceptible to class wide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*s, 568 U.S. 455, 469 (2013) (emphasis in original). Rather, predominance merely requires "that common questions ***predominate*** over any questions affecting only individual [class] members." *Id*. (emphasis in original) (internal quotation omitted).

Predominance is readily satisfied in data breach class actions like this—after all, "many common questions of fact and law [] arise from [an] alleged data breach and [d]efendant's alleged conduct predominate over any individualized issues." *Abubaker*, 2021 U.S. Dist. LEXIS 252202, at \* 10; *see also In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at \*16-17 ("The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile."); *Brent,* 2024 U.S. Dist. LEXIS 112172, at \*8-9 (same); *Nat'l Bd. of Exam'rs in Optometry,* 2019 U.S. Dist. LEXIS 120558, at \* 12-13 (same); *In re Novant Health,* 2024 U.S. Dist. LEXIS 107949, at \*15  (same).

Predominance is similarly satisfied here because Defendant's liability turns on common questions, as discussed *supra*, such as the effectiveness of their data security systems and the lawfulness of their actions and omissions, and the legal issues faced by the Settlement Class arise from the same set of facts related to the Data Incident.  Because these common questions, arising

from a common source of liability, will predominate over any individual questions, class certification for settlement purposes is appropriate.

### 2. Class action treatment is superior to other methods.

Superiority requires that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at \*14 (quoting Fed. R. Civ. P. 23(b)(3)). For example, in *Robinson*, superiority was satisfied given "the large size of the proposed class . . . judicial economy [would be] achieved through common adjudication" and because "[t]he expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive." *Id*. at \*16– 17. Similarly here, the resolution of thousands of claims in one action is far superior to and much more efficient than litigation via protracted, individual lawsuits. *See Dominion Dental*, 2021 U.S. Dist. LEXIS 252202, at \*11 (E.D. Va. Nov. 19, 2021); *In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at \*17; *Brent*, 2024 U.S. Dist. LEXIS 112172, at \* 12; *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at \* 13 (same); *Abubaker*, 2021 U.S. Dist. LEXIS 252202, at \* 11  (same); *In re Novant Health,* 2024 U.S. Dist. LEXIS 107949, at \*15 (same).

### D.  The Settlement is Fair, Reasonable, and Adequate.

Under Rule 23(e), a district court may approve a settlement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). However, "at the preliminary approval stage, the Court need only find that the settlement is within 'the range of possible approval.'" *Costco*, 340 F.R.D. at 249 (D.S.C. 2021) (quoting *Scott v. Family Dollar Stores, Inc*., No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at \*10 (W.D.N.C. Mar. 14, 2018)). Notably, in *Jiffy Lube*, the Fourth Circuit bifurcated this analysis into (1) a "fairness" inquiry with four relevant factors, and (2) an "adequacy" inquiry with five relevant factors. *In re Jiffy Lube*, 927 F.2d at 158–59.

**1.  The Settlement is fair.**

To assess the "fairness" of a settlement, the Fourth Circuit has provided four relevant factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *22 (quoting *In re Jiffy Lube*, 927 F.2d at 159). On balance, these four factors weigh toward the granting of preliminary approval.

*i.  Posture of the Case*

This factor "concerns the means by which the parties settled the action." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *23. Importantly, a case "settle[d] early in the litigation . . . may nonetheless be deemed fair." *Temp. Servs.,* 2012 U.S. Dist. LEXIS 199143, at *27 (collecting cases). Even a case that settles "very early", within "only months after the filing of the class action complaint" may be approved. *Id.* (citing *Grice v. PNC Mortg. Corp. of Am.*, Civil Action No. PJM-97-3084, 1998 U.S. Dist. LEXIS 23875, at *16 (D. Md. Apr. 30, 1998)). As extensively stated above, Plaintiffs here reached a settlement only after lengthy adversarial proceedings, including informal discovery and a full day of mediation before an experienced and neutral mediator. *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *25 (Finding that the posture of a case heavily favors preliminary approval when parties have negotiated contested factual and legal issues and engaged in formal mediation settlement with the assistance of a professional mediator, which "dispels any apprehension of collusion between the parties") (internal citations omitted). This court should find that this factor weighs towards preliminary approval.

*ii.  Extent of discovery*

The second factor "ensures that all parties 'appreciate the full landscape of their case when agreeing to enter into [the] Settlement.'" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *25 (quoting *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254). As Plaintiffs describe above, they and their attorneys extensively investigated the breach pre-suit and engaged in informal pre-mediation discovery. Borrelli Decl. ¶¶3-4. That investigation revealed Plaintiffs' landscape for settlement, including their chances in surviving summary judgment, certifying the class, and proving their case at trial. Armed with that information, the parties were able to act intelligently at mediation when outlining the settlement's terms. Similar efforts have been found sufficient to weigh for preliminary approval. *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *25–26.

### iii.   Circumstance of Negotiation

The third *Jiffy Lube* factor examines is "the proposed settlement is non-collusive and was reached in good faith based on the circumstances of the negotiations[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *26–27. Thus, "any concern[s] that counsel colluded in reaching agreement" may be dispelled when "negotiations were 'adversarial' and conducted at 'arm's length[.]'" *Id.* (quoting *Temp. Servs.*, 2012 U.S. Dist. LEXIS 199143, at *28; *see also In re NeuStar, Inc. Sec. Litig.,* No. 1:14cv885 (JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (same). Here, there can be no question the Settlement was the result of arm's-length negotiation in which there is no hint of collusion.

Throughout all negotiations here, Settlement Class counsel and counsel for Arcadia Publishing fought hard for the interest of their respective clients. Further, Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches.  *See generally,* Borrelli Decl. Thus, this factor again weighs toward preliminary approval.

### iv.   Counsel's Experience

Finally, the fourth factor assesses whether the parties "are represented by competent and experienced counsel, which weighs in favor of settlement approval." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *27–28. This is a low bar as "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Id*. Here, counsel for Plaintiffs have decades of experience as a vigorous class action litigator and are well suited to advocate on behalf of the class. *See* Borrelli Dec. ¶¶9-18, Ex. A. Moreover, they have put their collective experience to use in negotiating an early-stage settlement, reached through arms-length negotiations, that guarantees immediate relief to class members. Thus, this factor is also satisfied, and counsel for Plaintiffs should be appointed as Settlement Class Counsel.

### 2.   The Settlement is adequate.

To assess the "adequacy" of a settlement, the Fourth Circuit has provided five relevant factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *28-29 (citing *In re Jiffy Lube*, 927 F.2d at 159). On balance, these five factors also weigh toward the granting of preliminary approval.

### i.   Strengths, Difficulties, and Defenses

Given the overlapping nature of the first and second factors, courts address them in one fell swoop. *See e.g., Robinson*, 2019 U.S. Dist. LEXIS 26450, at *29 (considering the "first and second factors" together); *Clark v. Experian Info. Sols., Inc*., No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324, at *35 (D.S.C. Jan. 14, 2004) (same); *Monterrosa v. Mi Casita Rests*, No. 5:14-CV-448,

2017 U.S. Dist. LEXIS 239109, at *16 (E.D.N.C. Sep. 22, 2017) (same). Here, courts consider "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *29 (finding that these factors weighed towards preliminary approval as the defendant "denie[d] that it committed any wrongdoing . . . and vigorously dispute[d] the claims asserted" and class counsel "recognize[d] the costs and risks of prosecuting this litigation through class certification, summary judgment, trial, and appeal[.]")

The strengths, difficulties and defenses here weigh in favor of settlement approval. While Plaintiffs strongly believe in the merits of their case, they also understand that Arcadia Publishing denies any wrongdoing, and will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risks inherent in trying to achieve and maintain class certification and prove liability. In fact, should litigation continue, Plaintiffs would likely have to survive a motion to dismiss by Defendant in this Court in order to proceed past the pleading stage and into litigation. Given the facts Plaintiffs identified in pre-suit discovery, including those affecting the class size, these factors favor settling the class's claims. As a result, the Court should find this factor supports preliminary approval.

*ii.   Expense and Duration*

The next factor considers the "anticipated duration and expense of additional litigation." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *30–31 (finding this factor weighed towards preliminary approval because the case was "a fully contested class action lawsuit [that] would be expected to take significant time to resolve . . . [and] the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties.")

21

Pretrial litigation here would be extensive and long, with voluminous discovery needed from Arcadia Publishing. Experts will also be required to testify regarding Defendant's data security practices, industry standard data security practices, and the ways Arcadia Publishing's data security practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how it was taken, and what impact the taking has had and will have on the Settlement Class. As extensively explained above, litigation would also require that Plaintiffs survive a potential motion to dismiss and then proceed with class certification. Assuming a class will be certified, there is a potential for an appeal. Also, dispositive motion practice would follow that would consume several additional months, and all the while the law could change and threaten the claims. Following that, there would be a lengthy trial necessitated by the complexity of the claims and allegations. In sum, litigation would be complex and expensive, and it could take several years for the Class to see any real recovery, if any at all. Accordingly, the anticipated length of the litigation and its significant costs favors approving the Settlement Agreement.

### iii. Solvency of Defendant

The fourth factor "involves the solvency of Defendant and the likelihood of recovery on a litigated judgment." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *31. The Court in *Robinson* found that this factor weighed toward preliminary approval when there was "no evidence that Defendant is in danger of becoming insolvent[.]" Similarly here, Defendant is not in any danger of insolvency. Thus, this factor weighs toward preliminary approval.

### iv. Degree of Opposition

The fifth factor "addresses the degree of opposition to the proposed settlement." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *31. However, this factor is not strongly implicated at the preliminary approval stage. *See id.* ("Due to the preliminary nature of this motion, the Court is

unaware of any opposition to this settlement."). Regardless, to date, no Settlement Class members have objected to the parties' settlement, nor have they objected to the class representatives and counsel. Although members will have a chance to object after the administrator notifies them about the agreement, Plaintiffs anticipate the class will welcome its benefits given the relief they offer. This factor therefore again weighs towards preliminary approval and, the Settlement meets the requirements of Rule 23(a), 23(b)(3), and satisfies the factors provided by the Fourth Circuit in *In re Jiffy Lube*, 927 F.2d at 159.

### E. The Court Should Approve the Proposed Notice Plan.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and South Carolina Constitution and Federal Rule of Civil Procedure 23. *See* S.A. Exs. A-B. Here, the Settlement provides for direct and individual Notice to be sent via first class mail to each Settlement Class Member. S.A. ¶¶ 54, 81. In addition to disseminating Notice via direct mail, the Claims Administrator will establish the Settlement Website where all versions of the Settlement Notice will be available to Settlement Class Members, along with all relevant filings. S.A. ¶ 53.

The Notices themselves are clear and straightforward. S.A. Exs. A-B. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id*. The Notices disclose the essential terms of the Settlement Agreement, including the Service Award request for the Class Representatives and the amount Settlement Class Counsel intends to seek in attorneys' fees, costs, and expenses. *Id*. The Notices explain the procedures for making claims, objecting, and requesting exclusion and provides Settlement Class Members with information that enables them to calculate their individual recovery. *Id*. Finally, the Notices alert the Settlement Class Members to the date, time, and place of the Final Fairness Hearing and to the contact information for Settlement Class Counsel. *Id*.

The proposed direct mail Notice here is the gold standard and is consistent with other Notice programs approved in this district. *See Robinson*, 2019 U.S. Dist. LEXIS 26450, at *38 (approving notice sent to class members by first class mail); *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *16–17 (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Thus, the Court should approve the notice plan.

### F.  The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv); *see also Robinson*, 2019 U.S. Dist. LEXIS 26450 (appointing class

counsel when counsel had "conducted substantial work" and had "substantial experience prosecuting and settling [] class actions"). As evidenced by the Declaration of Counsel, the proposed Settlement Class Counsel meets these requirements. The Court should thus appoint Raina C. Borrelli of Strauss Borrelli PLLC, as Settlement Class Counsel under Rule 23(g).

### PROPOSED SETTLEMENT SCHEDULE

If the Court approves the parties' settlement, they request that the Court set the following deadlines:

| **Grant of Preliminary Approval** | |
|---|---|
| Settlement Administrator provides W-9 to Arcadia | 5 days after Preliminary Approval Order |
| Arcadia provides list of Settlement Class Members to the Settlement Administrator | 7 days after Preliminary Approval |
| Arcadia to Provide CAFA Notice Required by 28 U.S.C. § 1715(b) | Within 10 days of filing of the Preliminary Approval Motion |
| Long Form and Short Form Notices Posted on the Settlement Website | No later than 28 days after Preliminary Approval, or prior to the Settlement Website going live |
| Notice Date | 30 days after Preliminary Approval. |
| Reminder Notice | 60 days after Notice Date (if needed) |
| Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representatives Service Awards | 14 days before Objection and Opt-Out Deadlines |
| Objection Deadline | 60 days after Notice Date |
| Opt-Out Deadline | 60 days after Notice Date |
| Claims Deadline | 90 days after Notice Date |
| Settlement Administrator Provide List of Objections/Opt-Outs to Counsel for the Parties | 70 days after Notice Date |

| Initially Approved Claims List | 35 days after Claims Deadline |
|---|---|
| Initially Rejected Claims List | 35 days after Claims Deadline |
| Parties' Challenge to Any Claims | 35 days from Initially Approved Claims List |
| **<u>Final Approval Hearing</u>** | 120 days after Preliminary Approval Order (at minimum) |
| Motion for Final Approval | 14 days before Final Approval Hearing Date |
| Settlement Administrator Provides Court Notice of Opt-Outs and/or Objections | 14 days before Final Approval Hearing Date |
| **<u>Final Approval</u>** | |
| Payment of Attorneys' Fees and Expenses Class Representatives Service Awards | 7 days after Arcadia Publishing's final payment after the Effective Date |
| Settlement Website Deactivation | 90 days after Effective Date |

## CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: August 19, 2024                    Respectfully submitted,

                                          By: */s/Karolan Ohanesian*
                                              Glenn V. Ohanesian
                                              Karolan Ohanesian

OHANESIAN & OHANESIAN
504 North Kings Highway
P.O. Box 2433
Myrtle Beach, SC 29578
Telephone: (843) 626-7193
OhanesianLawFirm@cs.com

Raina C. Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Counsel for Plaintiffs and the Settlement Class*