**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| KATE EVERINGHAM and MARISSA HAGY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARCADIA PUBLISHING INC.,<br><br>Defendant. | Case No. 2:24-cv-00487-DCN |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

On August 19, 2024, the Court granted preliminary approval to the class action settlement of this case, which creates a $450,000 non-reversionary settlement fund from which significant benefits to the Class of approximately 13,669 potential data breach victims will be provided, including:

- 3-years of credit monitoring with $1 million in identity theft protection insurance at an estimated retail value of no less than $4,428,756 ($9/month x 36 months x 13,669 Class Members)—aimed at protecting Class Members from future harm caused by the breach.

- Up to $5,000 for unreimbursed economic losses and lost time (up to 5 hours at $25 per hour) that Class Members have already incurred.

- A $100 Alternative Cash Payment requiring no documentation, only a valid claim, in lieu of the other settlement benefits.

- Payment by Defendant (through the settlement fund) of attorneys' fees and expenses of $153,737.63 to Class Counsel and a service award of $5,000 to each of the Plaintiffs ($10,000 in total) in addition to all of the other relief provided to the Class Members.

1

- Defendant to pay the costs of notice and settlement administration through the settlement fund.

Court-approved notice of the proposed Settlement has been sent to the Class and a final approval hearing is scheduled for April 7, 2025. In conjunction with final approval, Plaintiffs respectfully request that the Court approve the attorneys' fees, expenses, and service award contemplated by the Settlement (one-third of the settlement fund, or $150,000 in attorneys' fees, $3,737.63 in reasonable litigation expenses, and a $5,000 service award to each Class Representative). The requested fees, expenses, and service awards are all reasonable, are similar to those awarded in similar litigation, are to be paid by Defendant through the settlement fund (and Defendant does not object to making the payments) and recognize the efforts of Class Counsel and the Plaintiffs in achieving a benefit for thousands of other people, all at their own risk.

## BACKGROUND FACTS & PROCEDURAL HISTORY

### A. The Data Breach and Plaintiffs' Claims

Arcadia Publishing is "the nation's leading publisher of books of local interest." Doc. 18, Amended Complaint ("Am. Compl.") ¶ 18. To run its business, Arcadia Publishing obtains Private Information from its employees and/or individuals with whom it has contact. *Id*. ¶¶ 1, 19. That information includes current and former employees' names, Social Security numbers, tax identification numbers, and financial account information. *Id*. ¶ 2. In so doing, Plaintiffs allege that Arcadia Publishing promises to protect those individuals' data. *Id*. ¶¶ 19-21. Even so, Plaintiffs allege that Arcadia Publishing never implemented the safeguards and systems needed to fulfill those promises. *Id*. ¶ 22. As a result, Plaintiffs allege that Arcadia Publishing's misconduct led to a data incident occurring on March 6, 2023. *Id* ¶¶ 28-29.

Plaintiffs received notice their information may have been impacted in the Arcadia Publishing data incident. *Id*. ¶¶ 1, 10, 55, 69. On January 25, 2024, Plaintiff Everingham sued

Arcadia Publishing in the District of South Carolina, Charleston Division, to remediate the alleged harm the incident had caused the proposed Class. *See Everingham v. Arcadia Publishing Inc.,* Case No. 2:24cv487. This Complaint asserted six counts and demanded that Arcadia Publishing reimburse Plaintiff and the proposed Class for their losses. On August 2, 2024, Plaintiff Everingham amended her complaint to add Plaintiff Marissa Hagy. Doc. 18. Prior to filing Plaintiffs' case, Plaintiffs' counsel conducted an extensive pre-suit investigation to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by the Plaintiffs and the Class. Declaration of Plaintiffs' Counsel Supporting Motion for Approval of Attorneys' Fees, Expenses, and Services Awards ("Borrelli Decl.") ¶ 5. This extensive investigation helped Class Counsel effectively analyze and develop various legal theories and causes of action, as well as evaluate the strengths and weaknesses of various claims. *Id*.

Shortly after Plaintiff Everingham filed the initial complaint, and recognizing the benefits of early resolution, the parties agreed to work cooperatively to schedule mediation and attempt to resolve their claim. *Id*. ¶ 6. Mediation was scheduled for June 12, 2024. In advance of that date, Plaintiffs requested, and Arcadia Publishing produced, key information to inform the settlement negotiations, including without limitation the size of the proposed Settlement Class, facts concerning the named Plaintiffs, and other pertinent facts. *Id*. ¶ 7.

**B. Mediation**

On June 12, 2024, the parties participated in a full-day mediation with Judge Costa M. Pleicones (Ret.) from Haynsworth Sinkler Boyd, P.A., the former Chief Justice of the South Carolina Supreme Court, and a mediator experienced in resolving complex litigation, including class action cases. Borrelli Decl. ¶ 8. Under his guidance, the parties negotiated at "arm's length,"

communicating their positions through him and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.*

While negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.* ¶ 9. From the start, the parties agreed they would not negotiate Proposed Class Counsel's attorney fees or Plaintiffs' service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between Plaintiffs and the Settlement Class. *Id.*

After a full day mediation, the parties reached agreement on the key terms of the Settlement. In the following weeks, the parties diligently negotiated and circulated drafts of the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id.* ¶ 10. The Settlement Agreement was finalized and executed on August 7, 2024. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members. *Id.*

### C. Settlement and Preliminary Approval

After a settlement was reached, the parties proceeded with seeking approval of the settlement from the Court. On August 19, 2024, Plaintiffs filed an unopposed motion for preliminary approval, asking the Court to preliminarily approve the Class settlement, appoint Verita Global as the Settlement Administrator and order that notice commence, appoint Plaintiffs as class representatives, appoint Plaintiffs' counsel as Class Counsel, stay the case pending final approval, and schedule a final approval hearing. Doc. 22. On November 7, 2024, the Court granted Plaintiffs' motion for preliminary approval, ordering that class notice commence, that Plaintiffs file their fee and service award application within 14 days of the objection and opt-out deadline and set the final approval hearing for April 7, 2025, at 11:00 a.m. Doc. 25.

**ARGUMENT**

**A. Legal Standard Governing the Award of Attorneys' Fees**

Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also United States v. Tobias*, 935 F.2d 666, 667 (4th Cir. 1991) (explaining common fund is an "equitable exception to the "American rule" that parties bear their own costs of litigation"). The common fund doctrine vests the district court holding jurisdiction over the fund to spread the costs of litigation proportionately across all persons benefited by the suit. *Id.* The Supreme Court has "applied it in a wide range of circumstances as part of [its] inherent authority." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013) (collecting cases).

Class Counsel here has obtained significant results and benefits for the class. Accordingly, and pursuant to the common fund doctrine and the Settlement Agreement, Class Counsel now applies for a total fee award of one-third of the settlement fund, or $150,000, and reimbursement of reasonably incurred expenses of $3,737.63. Defendant has agreed to and is able to pay this attorney's fee award and expenses through the settlement fund. Plaintiffs also request approval of a service award in the amount of $5,000.00 per Plaintiff ($10,000.00 total) for their time and effort in this Action. These requests are reasonable considering the risk undertaken, the work performed, and the results achieved, and are consistent with similar awards approved in this Circuit. The Settlement Agreement is the product of skilled and dedicated efforts by Class Counsel through

5

considerable litigation in a case involving complex issues of fact and law. For the reasons that follow, these requests should be approved.

### A. Percentage of the Fund Method is Appropriate

The award of attorneys' fees is within the sound discretion of the trial judge. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (further citation omitted). While the Fourth Circuit has not made obligatory a particular method of determining fees in common fund cases, it has recognized the financial significance of the contingency fee and associated risks. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010); *Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 786 (4th Cir. 2019), *as amended* (Mar. 22, 2019) ("courts routinely impose enhanced common fund awards to compensate counsel for litigation risk at the expense of beneficiaries who do not shoulder this risk."); *see also Layman v. State,* 376 S.C. 434, 452, 658 S.E.2d 320, 329–30 (2008) ("The common fund doctrine allows a court in its equitable jurisdiction to award reasonable attorneys' fees to a party who, at his own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property.")

In a class action settlement, awards are made either under the "lodestar method, the percentage of the fund method, or a combination of both." *In re MI Windows & Doors Prods. Liab. Litig.,* No. MDL No. 2333, 2015 U.S. Dist. LEXIS 95889, at *3 (D.S.C. July 23, 2015); *Phillips v. Triad Guaranty Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016) ("Courts either use the lodestar method, the percentage of the fund method, or a combination of both.").

"The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756,

6

758 (S.D.W. Va. 2009) (collecting cases). "As its name implies, the percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund" while "lodestar method requires the court to "determine the hours reasonably expended by counsel that created, protected, or preserved the fund[] then to multiply that figure by a reasonable hourly rate." *Phillips*, 2016 U.S. Dist. LEXIS 60950, at * 6 (citations and quotations omitted).

The percentage-of-the-fund method provides a strong incentive to plaintiff's counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances by removing the incentive, which occurs under the lodestar method, for class counsel to "over-litigate" or "draw out" cases in an effort to increase the number of hours used to calculate their fees. *See Jones*, 601 F. Supp. 2d at 759; *see also Ferris v. Sprint Communs. Co. L.P.*, Civil Action No. 5:11-cv-00667-H, 2012 U.S. Dist. LEXIS 198702, at *6 (E.D.N.C. Dec. 13, 2012) (noting that the percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys"); *Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("[A]n award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund."); *DeWitt v. Darlington Cty.*, No. 4:11-cv-00740, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) ("The percentage-of-the fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorneys' fees on an hourly basis.")

Under the percentage method, the attorney fee award is calculated using the gross amount of benefits provided to class members, including administrative costs, attorneys' fees and

expenses. *See Ferris*, 2012 U.S. Dist. LEXIS 198702, at *7-8. And in this district, it is common to award the percentage-of-recovery method. *See Savani v. URS Pro. Sols. LLC,* 121 F. Supp. 3d 564, 568 (D.S.C. 2015).

In the Fourth Circuit, fees constituting one-third of the settlement are reasonable. *Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 U.S. Dist. LEXIS 119873, at *12 (E.D.N.C. July 7, 2020) (collecting cases); *see also See also Temp. Servs., Inc. v. Am. lnt'I Group, Inc.*, 2012 WL 4061537, at *8 (D.S.C. Sept. 14, 2012) (approving a one third fee).

To be sure, attorneys' fees in common fund cases typically reflect "around one-third of the recovery."[1] Accordingly, Class Counsel's requested attorneys' fee (one-third of the settlement fund) here is typical in common fund cases.

### B. Factors Weigh in Favor of the Requested Fees

The Fourth Circuit has not required specific factors for consideration in a common fund case. There are two sets currently deployed in this Circuit, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) (adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978))[2] and *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009)

---

[1] *See* 5 NEWBERG ON CLASS ACTIONS § 15:73 (5th ed. 2016) (noting that a "33% figure provides some anchoring for the discussion of class action awards [to counsel]" and that "many courts have stated that … fee award in class actions average around one-third of the recovery."); *accord* Theodore Eisenberg & Geoffrey Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES, 27, 31, 33 (2004) (finding that courts consistently award 30–33% of the common fund).

[2] The *Johnson* factors are as follows:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the

(considering the following factors when determining the reasonableness of requested fees: "(1) the results obtained for the [c]lass; (2) objections by members of the [c]lass to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases."). Both focus on the reasonableness of the fees and many of the factors overlap.

      1.    *Class Counsel Achieved Extraordinary Results*

The most critical factor in determining the reasonableness of an attorney fee award is "the degree of success obtained." *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The results achieved and benefits conferred in this case is an incredible result, with Defendant agreeing to establish a $450,000 non-reversionary common fund from which the following benefits will be paid:

- 3-years of credit monitoring with $1 million in identity theft protection insurance at an estimated retail value of no less than $4,428,756 ($9/month x 36 months x 13,669 Class Members)—aimed at protecting Class Members from future harm caused by the breach.

- Up to $5,000 for unreimbursed economic losses and lost time (up to 5 hours at $25 per hour) that Class Members have already incurred.

- A $100 Alternative Cash Payment requiring no documentation, only a valid claim, in lieu of the other settlement benefits.

These benefits reflect an enormous success given the circumstances, and directly address the damages claimed by Plaintiffs and the Class in this action by reimbursing them for out-of-pocket losses and lost time stemming from the breach, providing the opportunity to protect their

---

case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

identity in the future, and providing a cash payment even if they have not yet experienced out of pocket losses or spent time responding to the breach. The size of the fund and the number of persons benefitting from the Settlement also weigh in favor of the reasonableness of the fees requested. The result here is all the more extraordinary in light of the very real litigation risks faced by Plaintiffs in this matter, given that class actions in general are inherently risky and the continuously developing law on data breaches. Further, these benefits are available to Class Members immediately, rather than years from now which would be the case absent settlement. The amount at issue and the results justify the requested award.

2. *Quality, Skill and Experience of the Attorneys*

Proper case management and effective representation in any complex class action, particularly one with novel and unique legal issues, require the highest level of experience and skill. *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex [] class action requires unique legal skills and abilities."). This case was certainly no different.

As previously stated in their Joint Declaration, Class Counsel are experienced in class actions, having settled hundreds among them, including numerous data breach matters. Doc. 22 (Declaration of Plaintiffs' Counsel Supporting Their Motion for Preliminary Approval of Class Action ("Prelim. Appr. Decl.")), ¶ 9, 15-18. Indeed, Class Counsel have developed a practice devoted to data breach matters and are experienced in assessing the issues affecting them. Class Counsel was able to confer such substantial benefits on Class Members, through extensive work and diligent negotiation, where Class Counsel was able to evaluate the strengths and weaknesses of various claims and arrive at a hard-fought but fair resolution of this matter. Prelim. Appr. Decl. ¶¶ 5-12. All told, Class Counsel demonstrated skill and dedication in zealously litigating the case.

Class Counsel were able to utilize their skills to obtain this highly valuable settlement that provides immediate benefits to the Settlement Class to address their injuries resulting from the data breach in lieu of the parties spending time and money in contested litigation. As a result, this factor justifies the fee request.

3.   *Genuine Risk of Non-Recovery*

Plaintiffs and Class Counsel faced the genuine and ever-present risk of zero recovery in the case, like all cases on a contingency fee basis. *Montague v. Dixie Nat'I Life Ins. Co*., 2011 WL 3626541, at *3 (D.S.C. Aug. 17, 2011) (It is well settled that "the riskier the case, the greater the justification for a substantial fee award."). Data breach cases are, by nature, particularly risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc*., Civil Action No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *id.* ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 13,669 class members, complicated and technical facts, and a well-funded and motivated defendant.

Class Counsel, who took this matter on contingency, faced numerous challenges. Courts have recognized that such risk deserves extra compensation and is a critical factor in determining the reasonableness of a fee. *See, e.g. Stocks v. Bowen*, 717 F. Supp. 397, 402 (E.D.N.C. 1989); *Gilbert LLP v. Tire Eng'g & Distribution, Ltd. Liab. Co.*, 689 F. App'x 197, 201 (4th Cir. 2017); *In re Dun & Bradstreet Credit Svcs. Cons. Lit.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889

F.2d 21 (11th Cir. 1990); *In re Cont. Ill, Sec. Lit.*, 962 F.2d 566, 569 (7th Cir. 1992). Thus, the existence of these issues, which were issues of first impression, justifies the requested fee.

    4.    *Fees in Similar Cases*

As evidenced above, the attorneys' fee requested in this case falls well within the range of common fund attorney fee requests in this circuit and nationwide. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 U.S. Dist. LEXIS 193107, at *7 (M.D.N.C. Sept. 29, 2016) (noting that a "one-third fee is consistent with the market rate" in ERISA class action); *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *15 (W.D.N.C. Mar. 14, 2018) (awarding one-third of the settlement fund plus reimbursement of costs); *Brown v. Lowe's Companies, Inc.*, No. 5:13-CV-00079-RLV-DSC, 2016 U.S. Dist. LEXIS 192451, at *11 (W.D.N.C. Nov. 1, 2016) ("the Court finds that this case warrants the requested award of attorneys' fees and costs to class counsel...constituting one-third of the Maximum Settlement Amount as described in the Settlement Agreement. This amount is reasonable in light of the results obtained, is consistent with Fourth Circuit precedent, and is confirmed as reasonable with a lodestar cross-check"); *City Nat. Bank v. Am. Commonwealth Fin. Corp.*, 657 F. Supp. 817, 822 (W.D.N.C. 1987) (approving attorney's fee award of one-third of approximately $1.3 million class recovery); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *22-23 (D.S.C. June 22, 2012) ("A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions. An award of fees in this range for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts") (citations omitted). Here, Class Counsel's fee

12

request amounting to one-third of the settlement fund is squarely in line with the typical amount awarded in similar cases.

     5. *No Objections to the Settlement*

The number of objections to a settlement provides insight into how class members view a settlement, and thereby assist the Court in making a determination as to the reasonableness of the requested attorneys' fee award. As of the date of this filing, neither Plaintiffs' Counsel nor the Settlement Administrator has received an objection to the settlement or the request for attorneys' fees. Accordingly, Class Counsel's fee request enjoys virtually unanimous support from the Settlement Class Members.

### C. Class Counsel's Expenses are Reasonable

Federal Rule of Civil Procedure 23(h) allows a court approving a class settlement to "award reasonable...nontaxable costs that are authorized by law or by the parties' agreement." Accordingly, courts in the Fourth Circuit allow plaintiffs to recover "reasonable litigation-related expenses as part of their overall award." *Decohen*, 299 F.R.D. at 483 (citation omitted). Recoverable costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988). "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel are integrally related to the work of the attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation…." *Daly v. Hill*, 790 F.2d 1071, 1083 (4th Cir. 1986).

Class Counsel requests that the Court reimburse $3,737.63 in reasonable expenses and costs incurred in the prosecution of this litigation. These expenses and costs were incurred in the prosecution of Plaintiffs' case and in protecting the interests of the putative class. Class Counsel's

request for costs and expenses should be approved as fair and reasonable given that counsel has a strong incentive to keep costs and expenses at a reasonable level due to the high risk of no recovery when the fee is contingent. Borrelli Decl. ¶ 13.

### D. The Requested Service Awards are Reasonable

Service awards are "routinely approved" in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Kay* Co., 749 F. Supp. 2d at 472; *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (Service awards compensate the class representative for work done on behalf of the class and make up for financial risk undertaken in bringing the action). Serving as a class representative "is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Id*. at 473; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Defendant agreed not to object to a service award for Plaintiffs in the amount of $5,000 each ($10,000 in total) in recognition of the time and effort personally invested in the case. The requested service award is reasonable, commensurate with their efforts in the litigation, and is within the scope of awards granted in this circuit. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No. 1:15-md-2627 (AJT/TRJ), 2020 U.S. Dist. LEXIS 181103, at *91 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000); *Speaks v. U.S. Tobacco Coop., Inc.*, 2018 U.S. Dist. LEXIS 26597, at *9 ($10,000 award, and collecting cases); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *17 n.3 (E.D. Va. Mar. 15, 2016) ("Various studies have found that the average incentive award per

plaintiff ranged from $9,355 to $15,992." *citing* Newberg on Class Actions § 17.8 (5th ed.)). The requested service awards should be granted.

## CONCLUSION

For the reasons above, Plaintiffs request that, as part of final approval of the Settlement, the Court grant Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Award.

Respectfully Submitted,

/s/Glenn V. Ohanesian
Glenn V. Ohanesian
Karolan Ohanesian
OHANESIAN LAW FIRM
P.O. Box 2433
Myrtle Beach, SC 29578
Phone: 843-626-7193
Fax: 843-492-5164
Email: OhanesianLawFirm@cs.com

Raina Borelli (*Pro Hac Vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
raina@straussborrelli.com

*Attorneys for Plaintiffs and Proposed Class*