**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| KATE EVERINGHAM and MARISSA HAGY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARCADIA PUBLISHING INC.,<br><br>Defendant. | **Case No. 2:24-cv-00487-DCN** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT**

Plaintiffs Kate Everingham and Marissa Hagy, individually and on behalf of others similarly situated ("Plaintiffs"), hereby submit their memorandum of law in support of their Motion for Final Approval of Class Action Settlement.

**A. INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23") and this Court's November 7, 2024 Order Granting Preliminary Approval of Class Action Settlement[1] ("Prelim. Approval Order," Doc. 25), Plaintiffs respectfully seek final approval of their class action Settlement with Defendant Arcadia Publishing Inc. ("Arcadia Publishing," and together with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2). The Settlement resolves all claims against

---

[1] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"), Doc. 25-2.

1

Arcadia Publishing on behalf of approximately 13,643 Class Members whose personally identifiable information ("PII") was potentially compromised in the March 2023 Data Incident.

Through extensive arms'-length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Class. *See* Declaration of Plaintiffs' counsel Supporting their Motion for Preliminary Approval of Class Action Settlement ("MPA Decl.") at ¶¶ 8,10-13 (Doc. 22-3). The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. *See id*. ¶¶ 3-4, 9. If approved, the Settlement will provide Class Members with the precise relief this lawsuit was filed to obtain.

Specifically, the Settlement negotiated on behalf of the class provides for the ability to claim four significant, meaningful categories of relief from the $450,000 non-reversionary Settlement Fund: (1) three-years of credit monitoring services; (2) reimbursement for lost time (up to 5 hours at $25 per hour); and (3) reimbursement for unreimbursed economic losses up to $5,000. The fourth benefit is a $100 cash payment (adjusted on a *pro rata* basis) as an alternative to all other benefits. SA ¶ 62.

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after informal discovery and work with experts, extensive investigation and negotiations, and months of work finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Claims Administrator—with the help of the Parties— disseminated Notice to the Class and implemented the user-friendly claims process that the Court approved. Individual notice was provided directly to Class Members via first class mail. SA ¶ 53. Notice was sent to 100% of the Settlement Class, and reached 92% of the Class, easily meeting Rule 23(c)(2)(B) and due process standards. *See* Declaration of Ana Espinoza of Verita Global

("Verita Global Decl."), ¶¶ 6-9, attached hereto as **Exhibit 1**; Fed. R. Civ. P. 23(c)(2)(B). The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was February 7, 2025. Only two (2) individuals requested exclusion from the Settlement, and there were no objections to the Settlement or to Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives. *See* Verita Global Decl. ¶¶ 13-14. By contrast, as of March 17, 2025, 2,351 timely claims have been submitted, representing 17.23% of the Class. *Id.* ¶ 12.

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms of the Data Incident, without protracted and inherently risky litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request this Court grant their Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), as well as Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, Expenses, and Service Awards ("Motion for Attorneys' Fees"), under which Plaintiffs seek $150,000 in attorneys' fees, $5,090.69 in costs[2], and $5,000 service awards for Plaintiffs, filed on January 21, 2025. (Doc. 27).

### B.  INCORPORATION BY REFERENCE

---

[2] Plaintiffs' Motion for Attorneys' Fees included a request for $3,737.63 in costs incurred through January 21, 2025. Plaintiffs' final cost request, reflected herein, includes travel costs related to the final approval hearing. Under the Settlement Agreement, Settlement Class Counsel is entitled to seek up to $20,000 in reasonable costs. S.A. ¶ 101.

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Motion for Preliminary Approval"), filed on August 19, 2024, Doc. 22-1 and the accompanying exhibits filed in conjunction therewith. Plaintiffs also incorporate Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards and supporting declaration. Doc. 27.

## C. THE SETTLEMENT TERMS

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $450,000 non-reversionary common fund.

### i. The Settlement Class

The Settlement Class is defined as follows:

> All individuals residing in the United States who were sent a notice by Arcadia informing them of the Data Incident Arcadia discovered in April 2023 or were otherwise determined to have had personal information potentially impacted.

Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶ 48.

### ii. The Settlement Benefits

The following benefits are available to Settlement Class Members who submit valid and timely claim forms.

- 3-years of credit monitoring with a $1 million in identity theft protection insurance at an estimated retail value of no less than $4,428,756 ($9/month x 36 months x 13,669 Class Members)—aimed at protecting Class Members from future harm caused by the breach.

- Up to $5,000 for unreimbursed economic losses and lost time (up to 5 hours at $25 per hour) that Class Members have already incurred.

- A $100 Alternative Cash Payment requiring no documentation, only a valid claim, in lieu of the other settlement benefits.

- Payment by Defendant (through the settlement fund) of attorneys' fees and expenses of $153,737.63 to Class Counsel and a service award of $5,000 to each of the Plaintiffs ($10,000 in total) in addition to all of the other relief provided to the Class Members.

- Defendant to pay the costs of notice and settlement administration through the settlement fund.

In addition to the Class Relief, all costs for administration and notice will be paid from the Settlement Fund. Also, Plaintiffs have previously moved for an award of attorneys' fees, expenses, and service awards, also to be paid from the non-reversionary Settlement Fund.

### D. NOTICE AND CLAIMS ADMINISTRATION

*i.  CAFA Notice.*

Verita Global began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Verita Global Decl. ¶ 2. On August 27, 2024, Verita Global sent the CAFA Notice, via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United States.

*Id.* ¶ 3.   A copy of the CAFA Notice cover letter is attached hereto as Exhibit A to Verita Global's Declaration.

      *ii.*    *Direct Mail Notice.*

Verita Global received the Class List on November 14, 2024. *Id.* ¶ 5. The list contained 13,672 full names, and last known mailing addresses. *Id.* Verita Global undertook several steps to review the records that were provided and compiled the Class List, including eliminating 29 duplicate records. *Id.* To ensure that the Notice of Proposed Settlement (in Postcard format) would be deliverable to Settlement Class Members, Verita Global also ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with 420 address changes received from the NCOA. *Id.*

On December 9, 2024, Verita Global caused 13,643 copies of the Notice of Proposed Settlement to be mailed to the Settlement Class and the Settlement Subclass via First Class Mail. *Id.* ¶ 6. On February 7, 2025, 12,556 reminder notices were mailed out. *Id.* ¶ 7. Since mailing the Notice Packets to the Class Members, Verita has received 3,181 Notice Packets returned by the USPS with undeliverable addresses. *Id.* ¶ 9. Through credit bureau and/or other public source databases, Verita performed address searches for undeliverable Notice Packets and was able to find updated addresses for 738 Class Members. *Id.* Verita promptly re-mailed Notice Packets to the newly found addresses. *Id.*

      *iii.*    *Settlement Post Office Box, Website, Toll-Free Number, and Email Address.*

In addition to the individual direct notice provided, Verita Global created a dedicated settlement website, *Id.* ¶ 10. The Settlement Website "went live" on December 9, 2024, and contains details of the Settlement, including the Settlement benefits, contact information for Class Counsel, how to calculate and make a claim, and the procedure for how to opt out  of  or  object

to the Settlement, Frequently Asked Questions, all related Court documents, and a copy of the Long Form Notice. *Id*. The Settlement Website provides Settlement Class Members with the opportunity to file Claim Forms online as well as downloadable versions of the claim form. *Id*. As of March 13, 2025, the Settlement Website received 8,617 visits. *Id*. The Settlement Website will remain active for at least 90 days after the Effective Date of the Settlement. Verita Global also established a toll-free help line ("Toll-Free Number") to provide Settlement Class Members with additional information about the settlement, which is available 24 hours per day, seven days per week. *Id*. ¶ 11. Settlement Class Members can call and interact with a live operator during regular business hours, which provides Class Members with important settlement information and, for class Members calling after regular business hours, the ability to leave a voicemail message to address specific requests or issues. *Id*. As of March 17, 2025, the telephone line has received 178 calls, with 94 of these calls being handled by a live operator. *Id*.

Finally, Verita Global established a designated P.O. Box to receive requests for exclusion, claims forms, objections, and correspondence from Settlement Class Members. *See Id*. The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement Website.

a. *Claims.*

The timing of the claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. Class members had until March 9, 2025, to file claims. As of March 17, 2025, Verita Global received 2,329 timely filed claims and 22 late filed claim forms. *Id*. ¶ 12. Verita has continuing to review all claim forms for validity. *Id*.

b. *Requests for Exclusion and Objections.*

Settlement Class Members were provided up to and including February 7, 2025 to object to or to request exclusion from the Settlement. Prelim. Approval Order, ¶ 15 (Doc. 25). Similar to the

timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. Doc. 27. As of March 17, 2025, Verita Global has received only two (2) timely exclusion requests and no objections to the Settlement. Verita Global Decl. ¶¶ 13-14.

### E. PRELIMINARY APPROVAL

Plaintiffs filed the Motion for Preliminary Approval on August 19, 2024, and the Court entered the Preliminary Approval order on November 7, 2024. Doc. Nos. 22 and 25. In the Court's Preliminary Approval Order, the Court appointed Plaintiffs Kate Everingham and Marissa Hagy as Class Representatives pursuant to Rule 23(e)(2)(A) and Raina C. Borrelli of Strauss Borrelli PLLC as Class Counsel. Rule 23(e)(2)(A); Doc. 25 ¶ 2. The Court also appointed Verita Global as the Claims Administrator. *Id.* ¶ 6. The Court further approved the forms of notice, which state the amount of attorneys' fees that would be requested, the fact that costs and expenses would be requested, the amount of service awards that would be requested, as well as approved the plan for disseminating notice to the Class. Class Members also had until February 7, 2025, to file requests for exclusions and objections, if any. Prelim. Approval Order, ¶¶ 9-10, 15. Class Members also had until March 9, 2025, to make claims. *Id.* ¶ 15. Class Counsel submitted a separate Motion for Attorneys' Fees, filed on January 21, 2025—the Court-ordered deadline to do so. *Id.* In the Court's Preliminary Approval Order, the Court scheduled the Final Approval Hearing in the lawsuit for April 7, 2025, at 11:00 a.m., at which time the Court will determine whether to finally certify the Action, whether to finally approve the Settlement and Settlement Agreement, whether to grant

Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, whether to dismiss the Lawsuits with prejudice, and whether to enter the final approval order and judgment.

### F.  LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). The primary concern is the "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Comm'rs of Pub. Works v. Costco Wholesale Corp.*, Civil Action No. 2:21-cv-42-RMG, 2024 U.S. Dist. LEXIS 41395, at *10 (D.S.C. Mar. 8, 2024). The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see* also *See Manual for Complex Litigation*, Sec. 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement,

and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. Loancare, LLC,* No. 5:21-cv-00451, 2022 U.S. Dist. LEXIS 202284, at *8 (S.D. W. Va. Nov. 7, 2022) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

## G. ARGUMENT

    i.   *The Claims Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process.*

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> (i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct mail Notice of Proposed Settlement (in Postcard format) is the gold standard and is consistent *with* Notice programs approved by other courts. *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (approving notice where individual direct notice mailed by fourth-class mail and settlement website and toll-free number established); *Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 145266, at *15 (S.D. W. Va. Oct. 27, 2015) (approving notice where individual direct notice mailed and settlement website and toll-free number established); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the

definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, that the court will exclude any class member who requests exclusion, and the binding effect of final approval and class judgment. *See* SA ¶ 81. The Notice utilized clear and concise language that is easy to understand, and the Notice was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Moreover, the Claims Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 100% of the Settlement Class Members, reaching 92% of the Settlement Class. Verita Global Decl. ¶¶ 6-10. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and well above) Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Smith*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 145266, at *6 (approving a "92.13% effective delivery rate to identified Class Members" as an "acceptable, and event exceptional, rate"); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program).

  ii. *The Settlement Class Should be Finally Certified for Settlement Purposes.*

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. See Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim.

Approval Order (Doc. 25). Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). *Id*.

*Numerosity:* Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *See e.g., Williams v. Henderson*, 129 Fed. App'x 806, 811 (4th Cir. 2005) (indicating that a class with over 30 members justifies a class). Here, with more than 13,000 individuals in the Settlement Class, numerosity is readily met.

*Commonality:* Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here commonality is readily satisfied as Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on or about March 6, 2023. Specifically, Plaintiffs alleged the following questions of law and fact that are common to the class, as discussed *supra*, such as the effectiveness of Arcadia Publishing's data security systems and the lawfulness of their actions and omissions, and the legal issues faced by the Settlement Class arise from the same set of facts related to the Data Incident. Thus, commonality is satisfied.

*Typicality*: The Class Representatives for the Settlement Class fulfill Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does

not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *13 (E.D.N.C. July 22, 2009). The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Security Incident and involve the same overarching legal theories. *See, e.g., Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202, at *6 (E.D. Va. Nov. 19, 2021). The legal and factual arguments that the Plaintiffs representing the Settlement Class advance are the same arguments that other Settlement Class Members would advance in support of their claims.

*Adequacy:* Adequacy requires that the class representative and their counsel must adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). The court conducts "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470, at *12  (D.S.C. Jan. 25, 2021) (quoting *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000)). Here, Plaintiffs' interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. And Settlement Class Counsel has significant experience litigating class actions, particularly in the data breach context. Settlement Class Counsel is well-suited to advocate and litigate on behalf of the Settlement Class. MPA Decl.,  ¶¶ 9, 15-18, Ex. A.

***Readily Identifiable:*** The "readily identifiable" standard is satisfied when class members can be identified "in reference to objective criteria." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *8 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Here, Defendant identified Settlement Class Members through its records and provided the class list to the Settlement Administrator.

***Predominance:*** Predominance requires that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members[.]" *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927, 2019 U.S. Dist. LEXIS 26450, at *14 (D.S.C. Feb. 14, 2019) (quoting Fed. R. Civ. P. 23(b)(3)). Predominance is readily satisfied in data breach class actions like this, as "many common questions of fact and law [] arise from [an] alleged data breach and [d]efendant's alleged conduct predominate over any individualized issues." *Abubaker*, 2021 U.S. Dist. LEXIS 252202, at * 10. Predominance is similarly satisfied here because Defendant's liability turns on common questions, as discussed *supra*, such as the effectiveness of their data security systems and the lawfulness of their actions and omissions, and the legal issues faced by the Settlement Class arise from the same set of facts related to the Data Incident.

***Superiority:*** Superiority requires that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *14 (quoting Fed. R. Civ. P. 23(b)(3)). Here, the resolution of thousands of claims in one action is far superior to litigation via protracted, individual lawsuits.

Thus, the Court should finally certify the Settlement Class for settlement purposes.

    iii.    *The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.*

        a.  <u>The Terms of the Settlement Warrant Final Approval under the Jiffy Lube Test.</u>

To determine final approval, the Fourth Circuit "adopted a bifurcated analysis, separating factors relating to the 'fairness' of the settlement from those relating to its 'adequacy'." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994).[3] Fairness focuses on whether the proposed settlement was the product of good-faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619, at *4 (E.D.N.C. June 11, 2010); *see also comm'rs of Pub. Works,* 2024 U.S. Dist. LEXIS 41395, *12, at *10. The proposed settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators" in the best of all possible deals. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (affirming district court's final approval of class settlement).

b.   The Settlement Terms Meet the Jiffy Lube Adequacy Requirement.

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Beaulieu v. EQ Indus. Servs.*, No. 5:06-CV-400-BR ALL, 2009 U.S. Dist.

---

[3] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors.")

LEXIS 133023, at *68-69 (E.D.N.C. Apr. 20, 2009) (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829–30).

> 1. *The Relative Strength of the Case on the Merits, the Risks of the Case if the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. At 1423 (D. S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Customer Data Sec. Breach Litig.,* 2020 U.S. Dist. LEXIS 118209, at *240-41 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc*., Civil Action No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 13,643 class members, complicated and technical facts, and a well-funded and motivated defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a motion to dismiss, class certification, and summary

judgment. Like any complex class action, data breach cases are challenging and time consuming to litigate, particularly here, where Arcadia Publishing disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident. Arcadia Publishing has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong, success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact …. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any harm that the Settlement Class Members may have suffered by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Litigating this case to a favorable conclusion will require a considerable amount of time and resources, and weighs in favor of accepting the Settlement now. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the monetary relief (a $ 450,000 non-reversionary common fund) provided for in the Settlement represents a significant and excellent result for the Settlement Class: (1) three years of credit monitoring services; (2) reimbursement for lost time (up to 5 hours at $25 per hour); (3) reimbursement for unreimbursed economic losses up to $5,000; and (4) a $100 alternative cash payment in lieu of the other settlement benefits. SA ¶ 62.

Based upon all this relief, this is a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[4] The Settlement provides benefits that address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

> 2. *The Solvency of Arcadia Publishing on a Litigated Judgment is Neutral and Does Not Preclude Final Approval.*

There is no evidence that Arcadia Publishing is in danger of becoming insolvent in the likelihood of a recovery in Plaintiffs' favor on a litigated judgment. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

---

[4] These Settlement terms are consistent with, and in fact better than, agreements approved by Courts in other, similar data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements).

### 3.  The Degree of Opposition to the Proposed Settlement.

The reaction of the Settlement Class to the proposed Settlement has been undeniably positive. As of March 17, 2025, out of the 13,643 Settlement Class Members who were sent notice, Verita Global received only two (2) timely exclusion requests. Verita Global Decl. ¶ 13. Moreover, as of March 17, 2025, Verita Global has received no objections to the Settlement. *Id.* ¶ 14. This is a *de minimis* number of requests for exclusion, and the opt-outs do not undercut the conclusion that the Settlement satisfies the adequacy requirement. *See Skochin v. Genworth Fin., Inc., Civil Action No. 3:19-cv-49,* 2020 U.S. Dist. LEXIS 212061, at *12 (E.D. Va. Nov. 12, 2020) (holding that proposed settlement satisfied adequacy requirement with 191 opt outs and 32 objections out of class of 207). "It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *West v. Cont'l Auto., Inc*., No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, at *18-19 (W.D.N.C. Feb. 5, 2018) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)); *see also Jessica S. Cook v. S.C. Pub. Serv. Agency of S.,* 2020 S.C. C.P. LEXIS 3690 (Ct. Com. Pl. July 21, 2020) (same).The presumption in favor of final approval applies here with no objection to the Settlement, and a negligible number of opt-outs.

### c.  The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel.

*Beaulieu*, 2009 U.S. Dist. LEXIS 133023, at *68-69 (citing *Jiffy Lube*, 927 F.2d at 158–59; *Horton*, 855 F. Supp. at 828).

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, Nos. 2:03-3845-23, 2:03-3943-23, 2:04-2314-23, 2006 U.S. Dist. LEXIS 46518, at *26 (D.S.C. July 10, 2006); *see also Adesso Homeowners' Ass'n v. Holder Props.*, No. 3:16-cv-710-JFA, 2017 U.S. Dist. LEXIS 224941, at *33 (D.S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption is applicable here.

Here, the posture of the case at the time of settlement was done as the parties were beginning to engage in fact and expert discovery. This is propitious time for settlement, as the Parties can direct their resources towards a possible settlement, as opposed to lengthy and expensive formal discovery and protracted litigation. The Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and data breach class actions in particular—and with the legal and factual issues in these cases. *See* MPA Decl. ¶¶ 9-18. Before discussing potential settlement, the Parties completed an extensive investigation and exchanged formal discovery—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id.* ¶¶ 6, 8. The Parties also participated in a full day of mediation with Judge Costa M. Pleicones (Ret.) from Haynsworth Sinkler Boyd, P.A., the former Chief Justice of the South Carolina Supreme Court, and a mediator experienced in resolving complex litigation, including class action cases, negotiating at arm's length and communicating their positions through him. *Id.*

This session with Justice Pleicones resulted in an agreement to the principal terms of the Settlement. *Id.* Following their mediation session, the Parties continued negotiating back and forth for weeks before reaching the particular terms of the Settlement Agreement and associated exhibits. *Id.* ¶ 8. Throughout all negotiations, Settlement Class Counsel and counsel for Arcadia Publishing fought hard for the interests of their respective clients, as evidenced by the motion practice in this case. Negotiations were at arms-length, and there is no evidence of collusion.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

**H. CONCLUSION**

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Incident, and credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.[8]

Dated: March 24, 2025

*/s/Glenn V. Ohanesian*
Glenn V. Ohanesian
Karolan Ohanesian
OHANESIAN LAW FIRM
P.O. Box 2433
Myrtle Beach, SC 29578
Phone: 843-626-7193
Fax: 843-492-5164
Email: OhanesianLawFirm@cs.com

Raina Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610

Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
raina@straussborrelli.com

*Counsel for Plaintiffs and Settlement Class Counsel*